## SKINNER v. PENNSYLVANIA GREYHOUND LINES, Inc.

### No. 7650.

Circuit Court of Appeals, Seventh Circuit.

Nov. 13, 1941.

Rehearing Denied Dec. 2, 1941.

Burke G. Slaymaker, of Indianapolis, Ind., and Denver C. Harlan and David E. Hasemeier, both of Richmond, Ind., for appellant.

Chas. O. Roemler, of Indianapolis, Ind., and Robert L. Study and Earl Keisker, both of Richmond, Ind., for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Appellee sought to recover damages for personal injuries alleged to have resulted from appellant's negligence in the operation of its bus. The specific negligence alleged was that while she was following the bus in an automobile, appellant's employee who was operating the bus, suddenly and without warning applied the brakes and brought the bus to a sudden stop, thereby blocking the forward vision and passage of the car in which she was riding. She alleged that she was free from contributory negligence. The answer admitted all the facts except that it alleged lack of knowledge of the character and extent of the injuries complained of, and denied that it stopped the bus suddenly and without warning, and also denied any negligence charged.

This accident occurred on February 14, 1939, at about three o'clock in the afternoon on U. S. Highway No. 35 in Preble County, Ohio. The traveled portion of this highway was of cement construction and was twenty feet in width. It was a bright, clear day and the pavement was dry.

Plaintiff and Mrs. Golay were riding as passengers in a single seat coupe driven by their companion Mrs. Christ. All of them lived in Richmond, Indiana, and were at the time returning to their home from Dayton, Ohio. The automobile in which the ladies were riding was following one of defendant's buses going from Dayton, Ohio, through Eaton, Ohio, and Richmond, Indiana, to Indianapolis. The automobile had followed the bus from the west edge of Eaton to the place of the accident. Both vehicles stopped at a railroad crossing approximately a mile east of the place of the accident. Both vehicles were traveling approximately at the same rate of speed from the railroad crossing westward. The automobile was trailing defendant's bus at a distance of from thirty to seventy-five feet. Mrs. Christ said she was driving behind the bus and looking straight at it, when it came to a sudden stop without giving any warning or signal. When the bus stopped she

quickly applied her brakes and swerved to the left. In attempting to stop her car, it skidded and hit the rear left-hand corner of the bus after or at the time it stopped. The three passengers of the car were thrown forward by the impact. Appellee's knee hit and bent the emergency brake and she suffered a permanent impairment of the knee joint. No question is raised as to the extent of injury.

At the time of the impact, the bus was on the north side and north of the middle line of the paved portion of the highway and had been traveling up to this point entirely on the north side of the highway, which, in the immediate vicinity of the accident and for some distance both east and west of this point, was substantially level. West of the point of collision there was a small, cement bridge with cement rails. The width of the highway over the bridge was twenty-four feet. At the time of and immediately before the collision there was no traffic in sight coming from the west to the east. There is no obstruction on the south side of the road until the guard rail of the bridge is reached.

The bus was thirty-two feet and ten inches long, eight feet and one and one-half inches wide, and nine feet and nine inches high. It weighed 19,610 pounds.

The equipment on the rear of the bus met all the requirements of the Interstate Commerce Commission. As a part of the equipment it had an amber ribbed lens over an electric bulb which lighted automatically with an application of the foot brakes. This construction made a light of such intensity that it could be seen four hundred to five hundred feet from the rear of the bus. This bus was inspected at both Indianapolis and Dayton immediately before it left, and all details were found to be in proper working condition.

As a result of the collision no passenger seated in the bus was disturbed, except that one was awakened from his sleep. One passenger was standing in the bus at or near the exit, and was expecting to alight when the bus stopped. The impact threw her off balance.

The stopping of the bus arose from the following facts: Mrs. Snowden, the alighting passenger, worked in Eaton. She rode the bus back and forth to her work, and was a passenger on the bus at the time of the accident, which occurred about one hundred and thirty to one hundred and thirty-five feet west of her home. She said the bus was traveling from fifty to sixty miles an hour, and when she saw that it was not going to stop to let her off, she arose from her seat and called to the driver and walked toward the front. The bus came to a sudden stop and she was thrown to the floor against the hand rail. She further stated that when the bus came to a sudden stop the car in the rear hit the bus.

■ The District Court clearly instructed the jury on the subjects of negligence, contributory negligence and ordinary care, and no exceptions thereto were preserved by either party. We are not privileged to interfere with the finding of facts by the jury, if they are supported by substantial evidence, and in considering this phase of the question we are bound to adopt the facts and all favorable inferences reasonably and naturally to be drawn therefrom which are most favorable to the appellee.

■ From the facts presented, we are unable to say as a matter of law that the appellant was not guilty of negligence under all the circumstances in bringing its bus to so quick a stop, nor can we say from the facts presented that appellee was guilty of contributory negligence in riding so close to the moving bus. A reading of the record convinces us that the jury's finding of facts, by their return of the general verdict for appellee, is supported by substantial evidence and we are not permitted to disturb that finding, however inconsistent it might be with our judgment, had we been the triers of the facts. The record discloses that the bus was going from forty to sixty miles an hour when the passenger signaled the driver for a stop. The driver said he was going forty-five miles an hour. If this be true he was traveling sixty-six feet a second and if he was going fifty miles an hour he was traveling seventy-three feet and four inches each second. The evidence is not definite as to how far the bus traveled after the driver received the notice of the stop. He says it was two hundred and seventy-five feet and that he began putting on his brakes before he got to the passenger's home. However, the jury were warranted in finding from the evidence that the bus was not very far east of the passenger's home when he received the signal. Moreover, there was evidence presented that the bus was traveling at sixty miles per hour, or at the rate of eighty-

eight feet a second, so that whatever rate of speed was considered as established or whatever distances are relied upon, we find the entire transaction completed in three or four seconds. The determination of the precise distance and rate of speed was entirely a matter for the jury to determine and we cannot interfere. It may be conceded, for the purpose of this argument, that the bus was in first class condition in all of its details, and that the public is charged with knowledge that this bus was authorized to use the highways and to stop to take on or discharge passengers. The jury has said that the appellant was negligent in the manner of stopping its bus, and that this negligence was the proximate cause of appellee's injury, and that she was not guilty of negligence contributing thereto. Under these circumstances we cannot say that the collision was a pure accident or that the verdict is not supported by substantial evidence.

Judgment affirmed.